# Johnson *v.* The State.

69　593
104　63

*Prosecution under Section 4354 of the Code, for Selling or Conveying Personal Property covered by Mortgage.*

1. *Jurisdiction of county court of Hale county.*—Under the statute conferring on the county court of Hale County "jurisdiction of all misdemeanors committed in said county" (Pamph. Acts, 1879-80, p. 295), that court has jurisdiction of a prosecution for misdemeanor, which was commenced by a warrant of arrest issued by a justice of the peace of the county, as a committing magistrate, who required the defendant to give

38

[Johnson v. The State.]

bail for his appearance before the county court to answer the accusation.

2. *Prosecution for selling or conveying mortgaged property under § 4354 of the Code; when no variance between accusation and proof.*—There is no variance between an accusation in a prosecution for selling or conveying personal property covered by written lien or mortgage, under section 4354 of the Code of 1876, pending in the county court, and the proof, where the accusation avers that the mortgage was written or printed, and the mortgage introduced in evidence was partly written and partly printed.

3. *Same; statute extends to printed mortgages or liens.*—The provisions of this statute (Code, § 4354) not only extend to *written* mortgages, liens and deeds of trust, but also extend to, and comprehend mortgages, liens and deeds of trust which are printed, or partly printed and partly written.

4. *The word "writing" includes printing.*—The declaration of section 1 of the Code of 1876, that "writing" includes printing on paper, is but a general rule of construction which would be applied in the absence of such statutory declaration.

5. *Section 4354 of the Code construed; the word "convey" includes an exchange.*—The word *convey* as used in the statute making it a misdemeanor to sell or convey personal property upon which there is a written lien or mortgage, etc. (Code, § 4354), includes a *transfer* of property by *exchange*.

APPEAL from Hale County Court.

Tried before Hon JAMES M. HOBSON.

This was a prosecution under section 4354 of the Code of 1876, and was commenced by a warrant of arrest issued by a justice of the peace, acting as a committing magistrate, upon an affidavit made before him. The defendant waived an examination before the justice and gave bail, as required by that officer, for his appearance before the county court, to answer the charge preferred against him. On the trial, had before a jury, evidence was introduced by the State, tending to show that within twelve months before the commencement of the prosecution, in said county, the defendant "swapped a mule colt" which he had conveyed by mortgage to one O'Donnell, for a horse. This mortgage was partly written and partly printed. The facts touching the other questions decided by the court, are sufficiently stated in the opinion.

The court, *ex mero motu*, charged the jury, that if they believed "from the evidence beyond a reasonable doubt, that the defendant, within twelve months before the commencement of this prosecution, in the county of Hale, in this State, swapped a mule colt upon which he had given a mortgage, partly written and partly printed, for a horse, without the consent of the holder of said mortgage, the debt secured by said mortgage being at that time unpaid, in whole or in part, they should find the defendant guilty." The defendant excepted to this charge, and also to the refusal of the court to charge the jury, at his written request, that if they believed the evidence, they must find him not guilty. The jury returned a verdict of guilty, as-

sessing the fine, upon which the defendant was sentenced by the court.

THOS. SEAY, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

(No briefs came to the hands of the reporter.)

BRICKELL, C. J.—The first question to which counsel directed argument is, whether the county court had jurisdiction of the cause—a prosecution for misdemeanor, commenced by a warrant of arrest issued by a justice of the peace, as an examining magistrate, who required the defendant to give bail for his appearance before the county court, to answer the accusation. The proposition is, that the county court of Hale county has final jurisdiction of misdemeanors, only in two classes of cases; *first*, when the accusation is preferred originally before the court; *second*, when an indictment has been presented to the circuit court by a grand jury, and it has been certified, or returned by the clerk of that court to the county court. There is no doubt of the jurisdiction of the county court in these cases, and, as we think, but little, if any doubt that it extends to all other prosecutions for misdemeanors, commenced by writ of arrest issued by a committing or examining magistrate. The grant of jurisdiction to the county court of Hale is very broad and general, expressed in these words: "The county court of Hale county shall have jurisdiction of all misdemeanors committed in said county."—Pamph. Acts, 1879–80, p. 295. Though the grant is broad and general, it does not extend to prosecutions for misdemeanors already commenced in the circuit court. The jurisdiction of the county court does not exclude that of the circuit court, which was pre-existing. The two courts would have concurrent jurisdiction; and in the class of cases referred to, the jurisdiction of the circuit court having attached, upon familiar principles, the court first taking jurisdiction, retains it to the exclusion of the other. The second and fourth sections of the act referred to, require all prosecutions for misdemeanors commenced in the circuit court, to be returned or certified to the county court, and, when so returned or certified, declares the jurisdiction of the circuit court shall cease, and that of them exclusive jurisdiction shall vest in the county court. These sections, so far from being merely descriptive of the class of cases to which the general grant of jurisdiction in the first sections extends, or a limitation upon that jurisdiction, is in enlargement of it. The tenth section of the act extends and applies to the court all laws of a general na-

ture concerning misdemeanors, unless there was some provision
or limitation in the act to the contrary.. If in express words
it had been declared that the jurisdiction of the court should ex-
tend to prosecutions for misdemeanors instituted as was this
prosecution, the intention of the legislature would have been
but little plainer.—*Blankenshire v. State*, at present term.
True, if the magistrate had held the accused to appear and an-
swer before the circuit court, it is possible the case would have
been passed upon by the grand jury. But the power of the
General Assembly to dispeuse with a grand jury in all prose-
cutions for misdemeanor, and to commit jurisdiction of them
to inferior courts, or to justices of the peace, is declared by the
constitution.

2.   The statute on which the prosecution is founded (Code of
1876, § 4354), declares : " Any person who sells or conveys any
personal property upon which he has given a written mortgage,
lien, or deed of trust, and which is then unsatisfied in whole
or in part," etc., is guilty of a misdemeanor. The accusation
avers the mortgage, or lien is written or printed. The mort-
gage produced in evidence was partly written and partly printed ;
and an objection to its admissibility was taken upon two grounds ;
*first*, that it varied from the description in the accusation ;
*second*, that the statute extends only to written mortgages or
liens, and does not comprehend a mortgage, lien, or deed of
trust, partly printed and partly written. An alternative aver-
ment of this character, in an indictment for this offense, would
correspond to the form of indictment prescribed for the anal-
ogous offense of buying, removing, or selling property, to
which others have a claim, created and defined by the preced-
ing section of the Code. See Form 57, p. 997, Code of 1876.
Such an averment would authorize the introduction in evidence
of an instrument, either written or printed. If it was not in-
cluded in the one, it would be included in the other averment.
They are the equivalent, in our practice, of separate counts.
As the averment would be sufficient in an indictment, it is
equally sufficient in an accusation before the county court,
where a simple designation of the offense by name, involves
the averment of every fact necessary to constitute it. The
point, however, is, that the instrument introduced in evidence
is neither written, nor printed, but both, and, therefore, does
not fall within either alternative of the accusation. The Code,
in defining words used in it, declares that " writing " includes
printing on paper.—Code of 1876, § 1. This is but a general
rule of construction, which would have been applied in the ab-
sence of statutory declaration.—*Saunderson v. Jackson*, 2 Bos.
and Pul. 238 ; *Henshaw v. Foster*, 9 Pick. 312. Any other
construction of the term *writiny* or *written*, when applied to

instruments of the character expressed in the statute, would be too close and narrow; and would lead to confusion, and the disappointment of the intention of parties transacting business in good faith.  There are numerous instruments, now in daily use in the transaction of business, required by law to be in writing, which are partly engraved, partly printed, and partly written.  In that form, they satisfy all the purposes of the law, that they shall be in writing—shall not rest in the uncertainty, and be subject to the frailty of mere oral evidence.  The purpose of the requisition of the law, that they should be in writing, being satisfied, no good reason can be assigned for taking the word *writing* or *written*, as applied to them, in a narrow, close sense, whether the word is found in a statute, or in pleading, limiting it to tracing with pen or pencil, and excluding impressions by printing or stamping, which may be more enduring. Words expand in signification, to meet the varied exigencies of the community, and to adapt themselves to the sense in which they are generally employed.  Bills of exchange, checks, promissory notes, memoranda of sales, conveyances of property, real or personal, liens upon property which are multiplied far beyond the common law signification of a lien, and now embrace every charge upon property for the security of a debt, are all found partly written, and partly printed.  Time and labor are saved by the employment of such instruments, and no purpose of the law requiring them to be in writing is evaded. In either form, they furnish permanent evidence of the contract, in every respect as unimpeachable as if they were wholly traced by a pen or pencil.  It would be the merest *sticking in the bark*, to declare such instruments were not within the word *written* or *writing*, when applied to them in either pleading or in a statute.

3.   We shall not now determine whether the statute would extend to an exchange of property, if it had not employed some other word than *sell*.   A sale, it is true, differs materially in its properties from an exchange or barter.   A power to *sell* may not, as a general rule, comprehend a power to exchange.— *Cleveland v. State Bank*, 16 Ohio St. 236.   And a penal statute, in derogation of the common law, directed by its words against sales only, may be incapable of a construction which would embrace an exchange.— *Gunter v. Leckey*, 30 Ala. 591.   These are not inflexible rules, and cannot be applied, when it is clear, the intention of the donor of the power, or of the law-maker, would be defeated.   The statute by its words embraces not only a sale, but a conveyance of the property.   The word *convey*, when applied to a disposition of property, has the signification of *transfer ;* and means the passing of title and dominion from one person to another.   It is in this, its largest sense, it is em-

[Nelson, Ex'r, v. Murfee.]

employed in this statute, intended to prohibit the mortgagor, or maker of a lien, or grantor in a deed of trust, from disposing of the property, so that the security of the mortgage or lien, or deed of trust, would be endangered or embarrassed. The danger or embarrassment would result not only from a sale, but from an exchange, a gift, or any other transfer, by which a title, not in subordination to the mortgage, lien, or deed of trust, was created, or by which the possession was changed. A word of large meaning was employed by the law-maker, to prevent evasion of the statute, by the adoption of other instrumentalities than such as would have been designated by a word of more limited significance. An exchange is a transfer of the property, violative of the statute.

We do not find error in the record, and the judgment of the county court is affirmed.