36 So.2d 83

**WHITTINGTON v. BARBOUR COUNTY BOARD OF EDUCATION.**

4 Div. 496.

Supreme Court of Alabama.

June 10, 1948.

E. W. Norton, of Clayton, and Richard T. Rives, of Montgomery, for appellant.

A. A. Carmichael, Atty. Gen., and Silas ·C. Garrett, III, Asst. Atty. Gen., for appellee.

LIVINGSTON, Justice.

This appeal is from an order or decree of the Circuit Court of Barbour County, sustaining a demurrer to the petition of Mary Neil Whittington for the writ of mandamus seeking a review of the action of the Board of Education of Barbour County in terminating her employment, or cancellation of her employment contract, as a teacher in the Barbour County school system.

In substance the petition for mandamus shows the following: The appellant is a teacher, as that term is employed in the Teacher Tenure Law of this State, and was employed in the Barbour County school system for the school years 1944–1945, 1945–1946 and 1946–1947. At the time the Board of Education took the first step which gave rise to this proceeding (April 29, 1947), she was then in the course of completing her third school year as a teacher in the Barbour County school system, and which school year ended on May 22, 1947. On April 29, 1947, the Board of Education gave Mrs. Whittington the following notice:

"Barbour County Schools
"Office of the Superintendent
"Clayton, Alabama
"April 29, 1947.
"Mrs. Mary Neil Whittington,
"Clayton, Alabama.
"Dear Mrs. Whittington:

"At a meeting of the County Board of Education this morning, I was instructed to notify you that the Board of Education will meet May 30, 1947, in the office of the County Superintendent of Education in

694

Clayton, and on the date and at the place will consider at the hour of 10:00 A. M., the cancellation of your contract of employment.

"This notice is given in compliance with the provisions of the teacher tenure law.

"Very truly yours,

"P. A. McDaniel

"County Superintendent of Education and Executive Secretary of the Barbour County Board of Education."

On May 5, 1947, Mrs. Whittington requested, in writing, that she be furnished with a written statement of the reasons for the consideration of the cancellation of her employment contract. On May 6, 1947, her request was complied with, and the following reasons assigned:

"1. Difficulty with discipline.

"2. Ineffective work done by pupils, probably due to lack of discipline.

"3. Dissatisfaction expressed by parents as a result of points being taken from grades as punishment.

"4. Inability to fit into the system perhaps as a result of local sentiment.

"5. Failure to cooperate with and a resentment attitude toward the administration."

On May 9, 1947, Mrs. Whittington requested in writing a hearing of the charges against her, and, on May 10, 1947, she was notified that said hearing would be held on May 19, 1947. On May 19, 1947, by agreement of the parties, the hearing was continued until May 23, 1947. The hearing was conducted on May 23, 1947, and on May 30, 1947, the Board of Education by unanimous vote of the members thereof, evidenced by the minute proceedings of the board, ordered the cancellation of Mrs. Whittington's employment contract, and she was so notified on that date.

The petition for writ of mandamus further alleges that, on May 23, 1947, before the taking of testimony, Mrs. Whittington objected to the board's hearing or considering the charges against her, or to further proceeding in the matter on the ground that section 357, Title 52, Code, had not been complied with. The objection was overruled, and the hearing proceeded with the results above indicated.

Section 352, Title 52, Code, reads:

"Any teacher in the public schools, who shall meet the following requirements, shall attain continuing service status: (a) Such teacher shall have served under contract as a teacher in the same county or city school system for three consecutive years and shall thereafter be re-employed in such county or city school system. (b) Such continuing service status can be conferred only by the re-employment of such teacher for the school year beginning in the fall of 1940, or for some subsequent school year."

Section 353, Title 52, Code, reads:

"The contract of employment of any teacher who shall attain continuing service status shall remain in full force and effect unless superseded by a new contract signed by both parties, or cancelled as provided in section 357 or section 358 of this title; provided that the legislature, or in the absence of legislation, the employing board of education may provide for the retirement of teachers at certain ages."

Section 357, Title 52, Code, provides:

"An employment contract with a teacher on continuing service status may be cancelled only in the following manner: Not less than thirty, nor more than forty days before the consideration by the employing board of education, of the cancellation of any such contract, such teacher shall be notified in writing of the exact date, time when, and place where such consideration is to take place; and such teacher shall be furnished with a written statement of the reasons for such consideration within five days after any written request for such statement, provided, however, that if, in the unanimous opinion of the superintendent and of the members of the employing board, the cause of cancellation of any such contract justifies, a teacher may be suspended immediately; provided, further, that such suspension in no case shall serve to deprive the teacher of the right of hearing as hereinafter provided. Any teacher shall, upon written request for hearing, file within fifteen days after the receipt by said teacher of notice of date, time and place of a proposed consideration for cancelling contract, be given a hearing before the employing board of education; such hearing shall be held not less than seven days, nor

more than ten days, after such request is filed and such teacher shall be given not less than five days notice of the time and place of such hearing. Such teacher, at the hearing, shall have a right to a full statement of the reasons for the proposed cancellation of such contract, and shall have a right to appear with or without counsel, and shall have a right to be heard and to present the testimony of witnesses and other evidence bearing upon the reasons for the proposed cancellation of such contract. No contract with a teacher shall be cancelled until the time set for consideration of the cancellation of such contract; nor until after a hearing is held, if such a hearing is requested by said teacher; nor until the employing board of education has by a vote of a majority of its members, evidenced by the minute proceedings of the board, ordered the cancellation of such contract after full compliance with the provisions of this section."

Section 360, Title 52, Code, provides:

"Any teacher in the public schools, whether in continuing service status or not, shall be deemed re-employed for the succeeding school year at the same salary, unless the employing board of education shall cause notice in writing to be given said teacher on or before the last day of the term of the school in which the teacher is employed; provided, however, that in no case shall such notice be given the teacher later than the first day of May of the termination of such employment, and such teacher shall be presumed to have accepted such employment unless he or she shall notify the employing board of education in writing to the contrary on or before the first day of June. The employing board of education shall not cancel the contract of any teacher in continuing service status, nor cause notice of non-employment to be given to any teacher whether in continuing service status or not except by a vote of majority of its members evidenced by the minute entries of said board made prior to or at the time of any such action."

██ Mrs. Whittington had not attained continuing service status on April 29, 1947. On that date the school board could have cancelled her contract of employment by the simple expedient of notifying her that she would not be re-employed for the next ensuing year. Section 360, supra. It is clear enough that the letter from the Board of Education to Mrs. Whittington, dated April 29, 1947, did not prevent her automatic re-employment for the school year 1947–1948, and it is not here insisted that it did. On May 22, 1947, the date on which the school year ended, Mrs. Whittington, by virtue of the provisions of section 352, supra, having served under contract as a teacher in the same county or city school system for three consecutive years, attained continuing service status. Thereafter, the only manner in which her employment contract may be cancelled is that provided by section 357, supra. We think it requires no argument to demonstrate that the requirements of section 357, supra, were not met.

The argument is further made that the actions of Mrs. Whittington in requesting, in writing, the charges against her, in making a written request for a hearing before the board, and her appearance before the board on May 19, 1947, and agreeing that the hearing might be continued to May 23, 1947, constitute a waiver of any defects in the notice and procedure.

██ Section 357, supra, provides the *only* manner in which an employment contract with a teacher on continuing service status may be cancelled. Its provisions are mandatory and jurisdictional. Mrs. Whittington, after attaining continuing service status, but before a hearing of the charges against her, objected to the hearing and insisted, in effect, that the board had not complied with section 357, supra, and was, therefore, without jurisdiction to proceed.

██ The averments of the petition for mandamus, taken as true on demurrer, plainly show that the requirements of the Teacher Tenure Law were not complied with, and Mrs. Whittington's contract of employment was not cancelled.

Reversed and remanded.

GARDNER, C. J., and BROWN and SIMPSON, JJ., concur.